THE CITY OF NAPLES.

EUSTROM v. THE CITY OF NAPLES.

(District Court, D. Minnesota, Fifth Division.    June 9, 1894.)

SHIPPING—PERSONAL INJURIES—NEGLIGENCE—GRAIN INSPECTORS.
    Libelant, who was a deputy grain inspector of the state of Minnesota, went upon respondent's vessel to inspect it, as required by law, and while so engaged he fell through an open hatchway, and was injured.    The vessel could not obtain a cargo of grain until it was inspected and given a certificate that it was in condition to carry grain safely, and this fact was known to the master.    *Held*, that the inspection was for the benefit of the vessel, and hence such a relation existed between libelant and the vessel that it is liable for injuries to him caused by the negligence of those in charge of it.

This was a libel by Ossian Eustrom, a deputy grain inspector, against the steamer City of Naples, for damages for injuries received by falling through an open hatchway.

John C. Hollembaek, for libelant.

H. R. Spencer, for claimant.

NELSON, District Judge. It was the duty of libelant, a deputy grain inspector, under the laws of the state of Minnesota, to inspect all grain and vessels in the port of Duluth, and by usage and custom in the port of Superior. On the 22d day of May, 1893, he went on board the steamer City of Naples for the purpose of inspecting that vessel, descending from the upper or spar deck into the forward compartment, thence through a door to the main or lower deck, where he fell through an open hatchway into the lower hold, a distance of 18 to 20 feet, and was injured. On the part of libelant, testimony was introduced tending to show that he was requested by the master to inspect his vessel, and was told by him to go down by the way of the forward compartment for that purpose; that when he reached the lower or main deck he found it was dark, the upper hatches being on, and he proceeded cautiously, but, by reason of the lower deck being lighted insufficiently, he fell through the first hatchway from the bulkhead and was injured. On the other hand, the master of the steamer denies that he requested libelant to inspect the vessel, or told him to descend by way of the forward compartment, but testifies he told him to descend through the first hatchway on the upper deck, where there was a permanent stairway, and introduces his own and other testimony to show that the lower deck was well and sufficiently lighted with a large number of candles and lanterns. Claimant further insists that libelant was injured solely by his own carelessness and negligence, and not through any fault on the part of the vessel or those in charge of it; also that libelant was not connected with the vessel in such manner as to create a contract relation between them sufficient to entitle him to recover. The evidence shows that the master of the vessel knew that Eustrom was in the employ of the state of Minnesota as a grain inspector, and that it was impossible to secure a cargo of wheat unless inspection was made, and the boat declared to be in such condition that the grain could be carried with safety. It was the duty of Eustrom to inspect the vessel and certify whether or not it was in proper condition. The performance of this duty by him was for the benefit of the vessel, and I think that when he went on board for that purpose he occupied a position something more than that of a mere licensee, and that, under the circumstances, such a relation was created between him and the vessel that those in charge of it were bound to exercise reasonable precautions for his safety. At the same time, under the evidence, I am satisfied that the libelant was not free from fault, and that there was mutual negligence; hence the rule in admiralty for the apportionment of damages must prevail in this case. That the injury to libelant was serious cannot be doubted, and, while it is not fully proved to be of a permanent nature, I am of the opinion that compensation should be awarded him for the injury, and I think the sum of $2,000 would be just and proper in the premises.